308

In the Matter of the Claims of WILLIAM S. GEORGE et al., Respondents-Appellants. MARTIN P. CATHERWOOD, as Industrial Commissioner, Respondent; GENERAL MOTORS CORPORATION, Appellant-Respondent.

GENERAL MOTORS CORPORATION, Individually and on Behalf of All Other Taxpayers, Employers and/or Unemployment Insurance Fund Contributors of the State of New York, Similarly Situated, Appellant, v. INDUSTRIAL COMMISSIONER et al., Respondents.

Third Department, January 17, 1962.

*Raichle, Moore, Banning & Weiss* (*Arnold Weiss* of counsel), for appellant-respondent and appellant.

*Lipsitz, Green, Fahringer & Fleming* (*Richard Lipsitz* of counsel), for respondents-appellants.

*Louis J. Lefkowitz, Attorney-General* (*Jean M. Coon* of counsel), for respondents.

COON, J. On October 2, 1958, the International Union, U. A. W., called a nationwide strike against General Motors Corporation. As a result every employee in all of the 124 plants of General Motors, including these claimants, left their jobs. The issues on a national level were soon resolved, but the strike continued locally until local unions, on a piecemeal basis, reached

agreement throughout the country. The plants where claimants were employed in the Buffalo area reached agreement on local issues on October 6, 13, 17, 22 and 27, respectively. However, claimants continued to be unemployed because of the lack of essentials produced by other plants still on strike. The Unemployment Insurance Appeal Board has decided that claimants were eligible for benefits from the date when the strike was settled at the particular plant where each claimant worked. The strike was not settled nationally and work resumed at all plants until November 3, 1958. The employer appeals from this decision.

We are not concerned in this case with the tactics alleged to have been employed or with the accusations and counter-accusations between General Motors and the union. We are concerned only with the very narrow question of when the strike or industrial controversy terminated within the meaning of subdivision 1 of section 592 of the Labor Law under the particular and unusual facts of this case.

Subdivision 1 of section 592 provides that benefits shall be suspended for seven consecutive weeks if unemployment is due to a " strike, lockout, or other industrial controversy in the establishment in which he was employed ". The word " establishment " has received attention from the courts in a number of cases which are cited to us. (*Matter of Machcinski* [*Corsi*], 277 App. Div. 634; *Matter of Lasher* [*Corsi*], 279 App. Div. 505; *Matter of Ferrara* [*Catherwood*], 10 N Y 2d 1; *Matter of Vingoe* [*Corsi*], 285 App. Div. 160.) Language used in some of these cases may provide some comfort to each of the parties to this controversy, but none of them is an analogous or binding precedent for the decision of this case. Those cases involved claimants who had not themselves participated in a strike.

The facts in the instant case are unprecedented. General Motors is a far-flung organization with 124 plants, widely separated geographically throughout the United States, interdependent one upon the other, and each producing something essential to a final finished product. When some of the plants are idle, others must of necessity be idle. Claimants must have been fully aware of this when they personally left their employment and initially participated in the strike. Their unemployment during the period for which they have been granted benefits was the direct and inevitable consequence of the strike in which they joined. They are not innocent victims of a situation wholly beyond their control, and their unemployment may not be said to be involuntary. (*Matter of Machcinski* [*Corsi*], 277 App. Div. 634, *supra*.)

310

The obvious purpose of subdivision 1 of section 592 of the Labor Law is to prevent the payment of benefits for voluntary unemployment and to prevent the use of unemployment insurance benefits to help finance a strike. This is exactly what would happen if the decision appealed from is permitted to stand.

In view of this conclusion on the employer's main appeal, the other question and the cross appeal are of no consequence.

The decision appealed from should be reversed, with costs.

BERGAN, P. J., GIBSON, HERLIHY and REYNOLDS, JJ., concur.

Decision appealed from reversed, with costs.